## County of Franklin
### v.
## County of Henry.

*Paupers, Insane Persons and Criminals—Apparent Residence Based on Employment—Liability of County for Support.*

1. Persons under legal restraint and insane persons are incapable of losing or gaining a residence. This rule applies to persons confined in prison, lunatics confined in an asylum and paupers sent to a poor-house.

2. Where one comes into a county or town and makes no arrangement for a home and has no fixed actual residence, but hires out and is employed by some person, his apparent residence is at the place of his employment.

3. The county where a person resides when he falls sick or becomes insane, or a pauper, even though his residence there is but temporary, is liable for his support primarily and until it can show that some other county is therewith legally chargeable, and is able to impose the burden of his support upon such county.

4. Where a person has been transferred from the penitentiary to an insane hospital and from there, by mistake, to the poor-house of a county of which he was not a resident, such county can recover the amount paid for his support from the county of his apparent residence.

[Opinion filed March 20, 1888.]

APPEAL from the Circuit Court of Henry County; the Hon. JOHN J. GLENN, Judge, presiding.

A jury was waived in this case, and the cause was submitted to the Circuit Court upon the following agreed state of facts:

"It is hereby agreed by counsel for plaintiff and defendant that one James Smith, who was and had been in the employ of Mr. Abbott as a farm laborer in Henry County, Illinois, for about one week, was, on or about September, 1867, arrested in said county upon the charge of an assault to commit a rape. That at the October term, 1867, of the Henry County Circuit Court, he was indicted for said offense. That at the following February term he was tried, convicted and sentenced to the penitentiary at Joliet for the term of five years. That some time previous to July 29, 1870, and while in the penitentiary, he became insane and was transferred to the insane hospital at Jacksonville. That about November, 1877, he was transferred to the insane hospital at Anna, Illinois. That about March 11, 1882, he was transferred to the poor-house of Franklin County under the then belief that he was a resident of and chargeable to that county. He was never a resident of Franklin County and he had not resided in Henry County previous to his employment aforesaid. The only evidence of his residence in Henry County is his having been employed as aforesaid and being arrested while there. It is also agreed that Henry County has paid for the support, etc., since March, 1884, and that Franklin County has paid out for the support of said James Smith the sum of $251.45; and if, from the above facts, Henry County is liable, judgment shall be entered for said sum of $251.45 and costs of suit."

It was also stipulated of record "that the only question of law involved in this case is, whether, under the above stipu-

lation, the County of Henry is liable for the amount paid by said County of Franklin for the support of said James Smith as shown in the foregoing stipulation." The court found the issues for the County of Henry, and entered judgment against the County of Franklin for costs.

Mr. W. S. CANTRELL, for appellant.

Mr. T. E. MILCHRIST, for appellee.

BAKER, J.    The general rule is that persons under legal restraint and insane persons are incapable of either losing or gaining a residence. A person confined in prison under the judgment and sentence of a court does not thereby change his residence, and a lunatic confined in an asylum does not thereby change his residence. The same rule is applied to the case of a pauper who is sent to a poor-house or poor-farm. See Town of Freeport v. Board of Supervisors, 41 Ill. 495, and cases there cited.

James Smith has been either in jail, in the penitentiary, in an insane hospital or in a poor-house since the time he was arrested for crime in Henry County in September, 1867. It is plain he has neither lost nor gained a residence since that date. If he was then a resident of Henry County, it follows he was a resident of said county when he became insane and chargeable as a pauper, and also at the commencement of six months immediately preceding his becoming so chargeable. What was the *status* of Smith in respect to residence at the time he was taken in custody on a criminal charge? He was, and for about a week had been, a farm laborer in the employment of a Mr. Abbott in Henry County. The pauper act provides, with the exceptions therein enumerated, that every county shall relieve and support all poor and indigent persons lawfully resident therein. Sec. 17 of the act provides : "The term residence, mentioned in this act, shall be taken and con- sidered to mean the actual residence of the party, or the place where he was employed, or in case he was in no employment then it shall be considered and held to be the place where he

made it his home." In Town of Dorr v. Town of Seneca, 74 Ill. 101, it was held that where a person comes into a county or town, and makes no arrangement for a home, and has no fixed actual residence, but hires out and is employed by some person, then he has an apparent residence at the place of such employment and falls within the second class of persons mentioned in the section of the pauper act above quoted. From what we have said, the conclusion results that Smith, at the time of his arrest, had an apparent residence, even if not an actual, fixed and permanent residence, in Henry County, and that within the intent and meaning of the pauper act he was lawfully resident therein; and it also follows that this *status*, or consideration of his in respect to residence, has continued from that time hitherto.

It is urged that the presumption is that Smith had an actual and permanent residence in some other county in this State, when he came to Henry County, and that as a condition precedent to a right of recovery, appellant must negative the fact that Smith had a residence elsewhere in the State. Every one has a domicile of origin, which he retains until he acquires another domicile; but there is no presumption, either of law or of fact, that the permanent home and residence of Smith was elsewhere in this State, and not in some other State or foreign country. When it is shown he has a place of employment, then such place is, under the statute, his apparent place of residence, and a *prima facie* case of liability for support is made out against such place of residence.

A poor person, whether sane or insane, has a right to live, and must not be permitted to die from want or exposure. Such is the humane intention of the law. The county where he resides when he falls sick, or becomes insane, or a pauper, even though his residence there is but temporary, is liable for his support primarily, and until it is able to show the county to which such poor person is properly and legally chargeable under the statute, and is enabled to impose the burden of support upon such latter county.

If Henry County could establish the fact that Smith had an actual residence in some other county of the State, it is prob-

County of Franklin v. County of Henry.

able it would have a remedy over against such other county; and, perhaps, if such fact appeared, Franklin County would be required to look for remuneration to such other county.

But no residence anywhere, except the apparent residence based upon employment in Henry County, appears in the case.

Smith never was a resident of Franklin County. Through a mistake made by the authorities of the State penitentiary with reference to his prison number, he was transferred from the insane hospital to the poor-house of Franklin County, upon the erroneous supposition that he was a resident of and chargeable to that county. From the necessity of the case, Franklin County was compelled to support him, until it could be ascertained to what county he was legally chargeable. He could not be permitted to die from want and starvation; and being insane he could not with safety to himself or others be turned loose upon the community.

In our opinion the judgment of the Circuit Court was erroneous. It is reversed and the cause is remanded with directions to enter judgment upon the agreed case in favor of the County of Franklin and against the County of Henry for the sum of $251.45 and costs.

*Reversed and remanded.*

LACEY, J. That Henry County was primarily liable for the support of Smith, after he became insane, by virtue of his residence in that county, and his having been sent to the penitentiary for crime committed in that county, can not be disputed; and such liability, under the statute, has been recognized by that county by paying for his support since 1884. By accidental circumstances, not produced by appellant, it was forced to support Smith, and by so doing, to that extent, relieved appellee from the burden of his support for the length of time he was supported. In equity and good conscience, appellee should reimburse appellant for so doing.

If some other county in this State were, even, known to be liable to appellee, in my opinion the appellant would not be compelled to first seek its remedy against such county, but it might sue the appellee and recover for the money expended

for its benefit, or, perhaps, it could sue the appellee and such other county jointly, or such other county singly, if it chose. As against appellant, each county would owe a common duty to support Smith. Appellant owed no duty to support him. City of Peoria v. Simpson, 110 Ill. 294.

But in this case, no such other county is known to be liable, and the agreed state of facts clearly shows liability existing against appellee. Thus far, I fully concur in the opinion.